IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANK JAMES BYRNE, JR., | : | No. 3:25-CV-1589 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| C.O. MCINTYRE, *et al.*, | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Frank James Byrne, Jr., initiated the above-captioned *pro se* action under 42 U.S.C. § 1983,[1] alleging that Pennsylvania Department of Corrections (DOC) officials infringed his constitutional rights and violated state law. Following statutorily required screening, the court will dismiss in part Byrne's complaint pursuant to 28 U.S.C. § 1915A(b)(1).

I.   **BACKGROUND**

During all times relevant to his complaint, Byrne was confined at the State Correctional Institution, Rockview (SCI Rockview), in Bellefonte, Pennsylvania. (See generally Doc. 1). According to Byrne, the incident in question occurred on February 20, 2025, in cell C-27 in the Restricted Housing Unit. (Id. at 5).

---

[1] Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002).

Bryne recounts that on this day, he attempted to commit suicide by hanging himself. (Id.) He alleges that the corrections officers who responded to his suicide attempt used excessive force for no legitimate reason. (Id.) Specifically, he avers that Corrections Officer McIntyre kicked him repeatedly and slammed his shackled legs to the ground, Corrections Officer Bush elbowed him in the back of the neck and "slammed" his head into the floor, and Corrections Officer Hardaker repeatedly punched him in the head and face and kicked him in the head. (Id.) He further alleges that Lieutenant Cessena personally observed this assault and, instead of intervening, "shook his head" and walked away. (Id.)

After the incident, Byrne was treated by "LPN Lena." (Id. at 9). He alleges that Lena "sent the officers" who assaulted him when his cellmate called out about Byrne's attempted suicide. (Id.) He further claims that she "neglected to send [him] to the ER" because she was allegedly told by Lieutenant Cessena that they did not want the injuries from the assault reported in the hospital records. (Id.) Instead, after examining Byrne, she told him that they were going to wait 24 hours to see if the swelling and redness dissipated. (Id.)

Byrne sues the following six defendants: Corrections Officer McIntyre, Corrections Officer Hardaker, Lieutenant Cessena, Corrections Officer Bush, LPN Lena, and the "State College State Police Barracks." (See id. at 2-4). He seeks monetary damages and injunctive relief in the form of several Defendants

being terminated from their employment and others being disciplined and retrained. (Id. at 10, 12).

## II. STANDARD OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," unrepresented prisoner complaints targeting governmental entities, officers, or employees. See 28 U.S.C. § 1915A(a). One basis for dismissal at the screening stage is if the complaint "fails to state a claim upon which relief may be granted[.]" Id. § 1915A(b)(1). This language closely tracks Federal Rule of Civil Procedure 12(b)(6). Accordingly, courts apply the same standard to screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6). See Grayson v. Mayview State Hosp., 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); O'Brien v. U.S. Fed. Gov't, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (*per curiam*) (nonprecedential); cf. Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000).

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Nami v. Fauver, 82 F.3d 63, 66 (3d Cir. 1996). The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. See Phillips v.

3

County of Allegheny, 515 F.3d 224, 229 (3d Cir. 2008). In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)).

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry. See Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted). At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) (alterations in original)). Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded. Id. (quoting Iqbal, 556 U.S. at 679). Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief." Id. (quoting Iqbal, 556 U.S. at 679). Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 681.

Because Byrne proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).  This is particularly true when the *pro se* litigant, like Byrne, is incarcerated.  See Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

## III.  DISCUSSION

Byrne attempts to assert a plethora of claims regarding the alleged February 20, 2025 assault, including excessive force, "cruel and unusual punishment," equal protection, retaliation, deliberate indifference to serious medical needs, medical malpractice, negligence, assault, battery, slander, and defamation.  (See Doc. 1 at 5-10).  Several of these causes of action can be disposed of summarily.

First, excessive force and "cruel and unusual punishment" are essentially the same Eighth Amendment Section 1983 claim here.  That is, the Eighth Amendment's prohibition on "cruel and unusual punishments" includes the prohibition of excessive force by prison officials.  Thus, the more accurate and appropriate Section 1983 claim against McIntyre, Bush, and Hardaker is "excessive force."  The court has little difficulty concluding that Byrne's allegations of the February 20, 2025 assault plausibly state an excessive force

claim against McIntyre, Bush, and Hardaker. However, there can be no excessive force claim against Lieutenant Cessena because Byrne does not allege that Cessena used any physical force against him during the incident.

Byrne's allegations, nevertheless, implicate an Eighth Amendment failure-to-intervene claim against Cessena. Byrne alleges that Cessena witnessed the assault and took no action to intervene or stop the beating. The court liberally construes the instant complaint as asserting a failure-to-intervene claim against Cessena and finds that Byrne's allegations plausibly state such a claim. See Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002) ("We hold that a corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so.").

Additionally, Byrne has not included any allegations that could be construed as raising or even implying a state-law claim of negligence, slander, or defamation. Byrne's allegations against the SCI Rockview corrections officers explicitly sound in *intentional* (rather than negligent) conduct, and nothing in his pleading implicates slander or defamation by any Defendant. Accordingly, these state-law claims will be summarily dismissed under 28 U.S.C. § 1915A(b)(1), and the court will examine the sufficiency of the remaining claims.

A.   **Claims Against the State Police**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by *a person* acting under color of state law." Rehberg v. Paulk, 566 U.S. 356, 361 (2012) (emphasis supplied) (citing Imbler v. Pachtman, 424 U.S. 409, 417 (1976) (citing 42 U.S.C. § 1983)). Only "persons" are subject to suit under Section 1983; state agencies do not qualify. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 64-65, 71 (1989) (explaining that a state is not a "person" for Section 1983 purposes); Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973) (noting that a state agency may not be sued under Section 1983 because it is not a "person"); Foye v. Wexford Health Sources Inc., 675 F. App'x 210, 215 (3d Cir. 2017) (nonprecedential) (dismissing Section 1983 claims against prison and Department of Corrections because they "are not persons subject to suit under" Section 1983).

Byrne cannot sue the "State College State Police Barracks" (or the Pennsylvania State Police) under Section 1983 because that entity is not a "person" subject to Section 1983 liability. See Fischer, 474 F.2d at 992; Foye, 675 F. App'x at 215. Additionally, any claim against a state agency is akin to suing the state itself, and such claims are generally barred by Eleventh

Amendment sovereign immunity. See Harper v. Jeffries, 808 F.2d 281, 284 n.4 (3d Cir. 1986) (noting that any Section 1983 action by prisoner against Pennsylvania Parole Board is barred by Eleventh Amendment); Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981) ("The eleventh amendment's bar [against civil rights suits in federal court targeting a state] extends to suits against departments or agencies of the state having no existence apart from the state."); Foye, 675 F. App'x at 215. Accordingly, any Section 1983 claim against the State College State Police Barracks or the Pennsylvania State Police will be dismissed with prejudice pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

Byrne also attempts to assert a claim of negligence against the State Police, but he has not done so. He alleges that his mother called the State Police and informed them that Byrne wanted them to investigate the assault and criminally prosecute the corrections officers involved, but that the State Police did not follow through with the investigation. (Doc. 1 at 10). However, there is no right to criminal prosecution. See Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). Thus, Byrne cannot establish an injury or harm from this alleged lack of prosecution by the State Police and consequently cannot plausibly state a negligence claim.

8

Additionally, any such tort claim against the State Police or its employees would be barred by state statutory sovereign immunity. See 1 PA. CONS. STAT. § 2310; 42 PA. CONS. STAT. §§ 8521, 8522(a).

### B. First Amendment Retaliation

Byrne asserts a retaliation claim against each corrections officer involved in the assault. But his pleading fails to allege causation for most Defendants.

Although a prisoner's constitutional rights are necessarily circumscribed, an inmate still retains First Amendment protections when they are "not inconsistent" with prisoner status or with the "legitimate penological objectives of the corrections system." Wisniewski v. Fisher, 857 F.3d 152, 156 (3d Cir. 2017) (quoting Newman v. Beard, 617 F.3d 775, 781 (3d Cir. 2010)). To state a First Amendment retaliation claim, a plaintiff must plausibly plead that (1) "he was engaged in constitutionally protected conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action. Id. (quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)); Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (quoting Rauser, 241 F.3d at 333).

Byrne's retaliation claim is largely undeveloped. It appears that, at one point during the alleged assault, McIntyre purportedly called Byrne a "rat" and said the assault was "for Pollock, stop with the fucking grievances you piece of shit!" (Doc. 1 at 6, 7). These allegations, liberally construed, are sufficient to state a retaliation claim against McIntyre. Byrne appears to assert that he filed a prison grievance (or grievances) against "Pollock," presumably another SCI Rockview official, and that McIntyre physically assaulted Byrne because of that protected First Amendment conduct. Byrne has not, however, plausibly alleged a retaliation claim against any of the other corrections officers, and those claims will be dismissed under Section 1915A(b)(1) for failure to state a claim.

### C. Equal Protection

Byrne attempts to assert an equal protection claim against every named Defendant. The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state a Fourteenth Amendment equal protection claim, a prisoner must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class[.]" Mack v. Warden Loretto FCI, 839 F.3d 286, 305 (3d Cir. 2016). An equal protection claim can also be asserted under a "class of one"

theory, whereby a plaintiff alleges that a state actor intentionally treated him differently than others who are similarly situated "and there is no rational basis for the difference in treatment." Phillips, 515 F.3d at 243 (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)).

Byrne's complaint fails to plausibly allege an equal protection violation. He does not allege membership in a protected class and thus appears to be attempting to raise a "class of one" equal protection claim. Nevertheless, he has failed to identify others who are similarly situated to him and who received intentionally different treatment by a Defendant (or Defendants), and thus he has failed to plausibly plead a class-of-one equal protection claim against any Defendant.

### D. Claims Against LPN Lena

Byrne asserts an Eighth Amendment claim of deliberate indifference to serious medical needs and a related state-law medical malpractice claim against LPN Lena concerning her medical treatment on the day of the incident. (See Doc. 1 at 9). These claims both fail because he has not alleged that he suffered any resultant harm from Lena's conduct.

To state an Eighth Amendment deliberate indifference claim regarding inadequate medical care, a plaintiff must plausibly plead that "(1) he had a serious medical need, (2) the defendants were deliberately indifferent to that

need; and (3) the deliberate indifference caused harm to the plaintiff." Durham v. Kelley, 82 F.4th 217, 229 (3d Cir. 2023) (citation omitted). To state a medical malpractice claim under Pennsylvania law, a plaintiff must plausibly allege "a duty owed by the [medical professional] to the patient, a breach of that duty by the [medical professional], that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of the harm." Toogood v. Owen J. Rogal, D.D.S., P.C., 824 A.2d 1140, 1145 (Pa. 2003) (quoting Hightower-Warren v. Silk, 698 A.2d 52, 54 (Pa. 1997)). Byrne has not alleged (and likely cannot plausibly allege) that the treatment provided by Lena on a single occasion—*i.e.*, examining him after the incident and deciding not to transfer him to an outside hospital—caused him harm. The court additionally observes that Byrne has not sufficiently alleged that Lena's medical treatment breached a duty of care under the appropriate medical standard, or that the breach was the proximate cause of his harm (in particular because no harm is alleged). Accordingly, his federal and state-law claims regarding the medical care he received must be dismissed pursuant to Section 1915A(b)(1) as well.

E.     **Leave to Amend**

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile." Grayson, 293 F.3d at 114. The court

will grant limited leave to amend. Byrne, if he desires, may attempt to amend his equal protection, retaliation, medical indifference, and medical malpractice claims.

His state-law claims of negligence, slander, and defamation, however, will be dismissed with prejudice, as nothing in his complaint even tangentially implicates these state-law torts. Furthermore, any claim asserted against the State College State Police Barracks or the Pennsylvania State Police will be dismissed with prejudice, as a Section 1983 claim against this state entity is nonviable and a state-law tort claim is barred by statutory sovereign immunity.

If Byrne chooses to file an amended complaint in conformity with this Memorandum, it should be a stand-alone document, complete in itself and without reference to any previous pleadings. The amended complaint should set forth his claims in short, concise, and plain statements, and in sequentially numbered paragraphs. Byrne must address the pleading deficiencies identified in this Memorandum. He <u>may not</u> include claims or defendants that have been dismissed with prejudice. He must include claims that this court has deemed sufficiently alleged if he desires to pursue those claims in this litigation.

Byrne must also sign the amended complaint and indicate the nature of the relief sought. If he desires to raise related state-law tort claims, he must clearly indicate what tort claim he is asserting, against whom he is asserting it, and what

actions or omissions by a defendant (or defendants) constitute the elements of such a state-law claim.

If Byrne chooses not to file an amended complaint, any dismissal without prejudice will automatically convert to dismissal with prejudice and this case will proceed on the following causes of action only: (1) individual capacity Eighth Amendment excessive force against McIntyre, Bush, and Hardaker; (2) state-law assault and battery against McIntyre, Bush, and Hardaker; (3) individual capacity First Amendment retaliation against McIntyre; and (4) individual capacity Eighth Amendment failure to intervene against Cessena.

## IV. CONCLUSION

Based on the foregoing, the court will dismiss in part Byrne's complaint pursuant to 28 U.S.C. § 1915A(b), as more fully set forth herein. Byrne may file an amended complaint or proceed on the claims that are sufficiently pled in his original complaint. An appropriate Order follows.

Date: 11/10/25

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court