**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FRANK JAMES BYRNE, JR.,** | : | **No. 3:25-CV-1589** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **C.O. MCINTYRE, *et al.*,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**ORDER**

Plaintiff Frank James Byrne, Jr., lodged a *pro se* complaint in the above-captioned action under 42 U.S.C. § 1983,[1] alleging constitutional violations by officials at SCI Rockview. (See generally Doc. 1). Byrne, who is a prolific filer, has filed three related motions to compel discovery. (Docs. 52, 60, 63). At the time he filed the motions, fact discovery was ongoing. (See Doc. 50 ¶ 1). The discovery period recently closed on August 31, 2026. (See id.).

Byrne's motions appear to seek discovery sanctions, alleging spoliation of evidence. (See, e.g., Doc. 53 at 1-2; Doc. 61 at 1). All the motions concern the same discovery dispute: Byrne maintains that he requested certain video footage from multiple different video cameras for an approximate hour-and-a-half time frame, and has only been provided with a short, two-minute video from one

[1] Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002).

stationary camera. (See generally Docs. 52, 60, 63). He claims that Defendants have intentionally withheld or destroyed the video footage he has sought in discovery and requests various sanctions, including monetary fines and default judgment. Because Byrne has failed to establish spoliation of evidence, the court will deny his motions to compel.

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Mosaid Tech. Inc. v. Samsung Elec. Co., 348 F. Supp. 2d 332, 335 (D.N.J. 2004) (citations omitted); see also FED. R. CIV. P. 37(e) (concerning failure to preserve electronically stored information); Bistrian v. Levi, 448 F. Supp. 3d 454, 467 (E.D. Pa. 2020). To resolve a spoliation claim, a court must conduct a two-part inquiry. McCann v. Kennedy Univ. Hosp., Inc., No. 12-cv-1535, 2014 WL 282693, at *4 (D.N.J. Jan. 24, 2014). First, the court must determine whether a party's conduct constitutes spoliation. Id. (citation omitted). Second, "[i]f the Court finds that a party has engaged in spoliation, it must next consider the appropriate sanctions available to redress the situation." Id.

The United States Court of Appeals for the Third Circuit has established a four-part test to evaluate whether spoliation has occurred. Under this test, spoliation occurs where: (1) "the evidence was in the party's control"; (2) "the evidence is relevant to the claims or defenses in the case"; (3) "there has been

actual suppression or withholding of evidence"; and (4) "the duty to preserve the evidence was reasonably foreseeable to the party." Bull v. UPS, Inc., 665 F.3d 68, 73 (3d Cir. 2012) (citing Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 334 (3d Cir. 1995)). As to the third element concerning suppression or withholding of evidence, "a finding of bad faith"—which may be inferred from circumstantial evidence—is "pivotal" to determining whether "sanctionable spoilation" has occurred. Id. at 79. Accidental or inadvertent conduct is insufficient to implicate sanctions like an adverse inference instruction or a presumption of the evidence being unfavorable; there must be intentional destruction or suppression of evidence. Id. (citing Brewer, 72 F.3d at 334).

Byrne's Section 1983 lawsuit primarily concerns a purported incident of excessive force on February 20, 2025. (See Doc. 12 at 1-2). He alleges that he attempted to commit suicide that day by hanging himself, and the corrections officers who responded to the emergency situation assaulted him in his cell for no legitimate reason. (See id. at 2).

In discovery, Byrne requested video footage from three different cameras: (1) a handheld video camera that he alleges was brought to his cell and also used during the medical triage; (2) CCTV footage from a stationary "block ceiling video camera" near his cell; and (3) stationary block video camera footage from the "triage room." (See Doc. 58-1 at 2, 3). The only video footage produced by

Defendants was an approximately two-minute-long video from the stationary CCTV block camera near his cell (*i.e.*, request number 2). (See id. at 3).

According to an affidavit by Lieutenant J. Butler, who worked in the security office at SCI Rockview at the time and who performed the DC-ADM 001 inmate-abuse investigation concerning Byrne's allegations of assault, no video was preserved from the handheld camera or from the stationary CCTV camera near the triage room because that footage had no relevance to Byrne's allegations of assault (which allegedly occurred in his cell). (See Doc. 58-2 ¶¶ 3, 5, 13, 17, 37-45). Lt. Butler further explained that in Byrne's grievance—which is the sole written statement Byrne was willing to provide during the investigation—he mentioned only the video footage from the stationary block camera outside his cell. (See id. ¶¶ 14, 16-19). Lt. Butler also attests that the handheld camera, which defendant Lt. Cessna ordered to be retrieved, only arrived when Byrne was already in the triage room. (Id. ¶¶ 24, 26).

As Lt. Butler explains, no Pennsylvania Department of Corrections (DOC) policy required preservation of the handheld camera footage. That is because Byrne's attempted suicide was neither a planned or unplanned use of force; rather, it was an emergency situation that required immediate response. (Id. ¶¶ 6-12, 38-39). Lt. Butler further explains that the stationary CCTV camera near the triage room is located in the hallway outside that room, and thus would not

show anything inside the triage room. (Id. ¶¶ 40-41). Thus, this camera's footage was neither reviewed during the investigation nor preserved. (Id.)

In sum, Lt. Butler attests that no video footage exists that would be responsive to Byrne's request number 1 or 3. This video footage was not preserved because there was no basis for its preservation.

Byrne has not proffered any rebuttal to Lt. Butler's explanations. He has not, for example, alleged or shown that he requested the preservation of the specific footage and his request was ignored. Nor has he established that a specific DOC policy mandated preservation. Moreover, his lawsuit was filed well after the at-issue footage was written over in the normal course of business. (See id. ¶ 45).

Without providing a basis for why the video footage in question should have been preserved, Byrne has not shown that there has been bad-faith suppression or destruction of evidence or that "the duty to preserve the evidence was reasonably foreseeable" to Defendants. See Bull, 665 F.3d at 73. Because Byrne cannot establish two of the four elements required for spoliation, his motions seeking to impose spoliation sanctions on Defendants are meritless.[2]

[2] To the extent that Byrne asks the court to compel Defendants to produce the at-issue video footage, the court cannot compel the production of video footage that does not exist (for the reasons provided in Lt. Butler's affidavit). See El Filali v. Harrisburg AL Operations LLC, No. 1:23-CV-00133, 2025 WL 3532141, at *2 n.2 (M.D. Pa. Dec. 9, 2025) (collecting cases).

**AND NOW**, upon consideration of the foregoing, **IT IS ORDERED** that:

1. Byrne's motion to compel (Doc. 52) is **DENIED**.

2. Byrne's motion "to compel/sanction" (Doc. 60) is **DENIED**.

3. Byrne's "motion to compel / sanction motion" (Doc. 63) is **DENIED**.

**Date: 9/10/26**

**BY THE COURT:**

***s/Julia K. Munley***
**JUDGE JULIA K. MUNLEY**
**United States District Court**